**NOT FOR PUBLICATION**

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| MAGIC REIMBURSEMENTS LLC, | |
| Plaintiff, | |
| v. | Civil Action No. 22-02121 (GC) (TJB) |
| T-MOBILE USA, INC., | **MEMORANDUM OPINION** |
| Defendant. | |

**CASTNER, U.S.D.J.**

      **THIS MATTER** comes before the Court upon Defendant T-Mobile USA, Inc.'s ("T-Mobile") Motion to Dismiss Plaintiff Magic Reimbursements LLC's ("Magic") Amended Complaint pursuant to Federal Rules of Civil Procedure ("Rule") 12(b)(1) and 12(b)(6). (ECF No. 22.) Plaintiff opposed (ECF No. 38), and Defendant replied (ECF No. 39). The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Rule 78(b) and Local Civil Rule 78.1(b). For the reasons set forth below, and other good cause shown, Defendant's motion is **GRANTED**.

## I.   BACKGROUND

      As this Court detailed previously, Magic alleges that T-Mobile (as tenant) regularly entered into lease agreements with third-party building owners (the "Landlords") in order to install and operate cellular telecommunications equipment on the rooftops of the Landlords' properties. (ECF No. 19 at 1.) The leases largely followed an industry template, which includes (among other things) a provision that requires T-Mobile to reimburse the Landlords for certain state and local taxes resulting from the addition of T-Mobile's equipment to the Landlords' properties. (*Id.* at 1-

2.)  Recognizing this pattern, Magic entered into agency agreements with various Landlords in New York City to assist them with submitting claims to and obtaining tax reimbursements from T-Mobile.  (*Id.* at 2.)  Despite an initial period when the claims were promptly processed, Magic alleges that T-Mobile began, in or around October 2021, slow-rolling its processing of tax reimbursement claims submitted by Magic on behalf of the Landlords.  Ultimately, T-Mobile sent letters in March 2022 to the Landlords denying the claims in what Magic views as an unlawful attempt to undermine Magic's business relationships with the Landlords.  (*Id.* at 3-7.)

On April 12, 2022, Magic (a limited liability company whose members reside in New Jersey) brought suit against T-Mobile (a Delaware corporation with its principal place of business in Washington), asserting claims for (i) tortious interference with present and prospective business relations, (ii) defamation and commercial disparagement, and (iii) promissory estoppel.[1]  (*See generally* ECF No. 1.[2])

On May 31, 2022, T-Mobile moved to dismiss the three-count Complaint pursuant to Rules 12(b)(1) and 12(b)(6).  (ECF No. 7.)  Following briefing (ECF Nos. 17 & 18), the Court (Wolfson, C.J.) granted the motion and dismissed Magic's claims without prejudice on September 29, 2022.  (ECF Nos. 19 & 20.[3])  The Court found that Magic did not have standing to pursue contractual relief that belongs exclusively to the Landlords and that Magic failed to state a claim for tortious interference, defamation/commercial disparagment, as well as promissory estoppel against T-Mobile.  (ECF No. 19 at 9-19.)  In granting Magic leave to amend, the Court "note[d] that Magic

---

[1]     The Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332.

[2]     Page numbers for record cites (*i.e.*, "ECF Nos.") refer to the page numbers stamped by the Court's e-filing system and not the internal pagination of the parties.

[3]     Chief Judge Wolfson's opinion can also be found at *Magic Reimbursements LLC v. T-Mobile USA, Inc.*, Civ. No. 22-02121, 2022 WL 4550647 (D.N.J. Sept. 29, 2022).

face[d] significant legal hurdles moving forward." (*Id.* at 19.)

On October 31, 2022, Magic filed its Amended Complaint, which is the operative complaint in the case. (ECF No. 21.) Magic now asserts four claims against T-Mobile: Breach of Contract (Count I); Tortious Interference with Present and Prospective Business Relations (Count II); Defamation and Commercial Disparagement (Count III); and Promissory Estoppel (Count IV). (*Id.* ¶¶ 135-85.) The factual allegations in the Amended Complaint largely mirror those in the original Complaint, (*compare* ECF No. 1, *with* ECF No. 21), with some exceptions that will be addressed in the relevant analysis of each claim below. Magic's most notable new allegation, made in support of the newly asserted breach of contract claim, is that "[f]ollowing . . . the Court's Opinion dated September 29, 2022 . . . , several Landlords amended their Agency Authorization with Magic and specifically authorized Magic to seek compensation pursuant to the Leases through legal action on their behalf." (ECF No. 21 ¶ 135.) Magic states that it is pursuing its breach of contract claim on behalf of the Landlords that granted Magic this authorization (though these Landlords are nowhere identified) as well as "numerous other Landlords" that Magic "anticipated . . . providing . . . Specific Authorization" (though these anticipated Landlords are also nowhere identified). (*Id.* ¶¶ 136-38.)

T-Mobile moved to dismiss the Amended Complaint in its entirety on November 14, 2022, again pursuant to Rules 12(b)(1) and 12(b)(6). (ECF No. 22.) After obtaining extensions, Magic opposed on January 23, 2023, and T-Mobile replied on February 6, 2023. (ECF Nos. 38 & 39.)

## II.    **LEGAL STANDARD**

### A.  **Subject Matter Jurisdiction – Rule 12(b)(1)**

Under Rule 12(b)(1), a party may bring a motion to dismiss for lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). Motions to dismiss for lack of standing are "also properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter." *Ballentine*

*v. United States*, 486 F.3d 806, 810 (3d Cir. 2007) (citations omitted); *accord N. Jersey Brain & Spine Ctr. v. Aetna, Inc.*, 801 F.3d 369, 371 n.3 (3d Cir. 2015) ("Ordinarily, Rule 12(b)(1) governs motions to dismiss for lack of standing, as standing is a jurisdictional matter."). "On a motion to dismiss for lack of standing, the plaintiff 'bears the burden of establishing the elements of standing, and each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation.'" *Ballentine*, 486 F.3d at 810 (quoting *FOCUS v. Allegheny Cnty. Ct. of Common Pleas*, 75 F.3d 834, 838 (3d Cir. 1996)).

### B. Failure to State a Claim – Rule 12(b)(6)

On a motion to dismiss for failure to state a claim, courts "accept the factual allegations in the complaint as true, draw all reasonable inferences in favor of the plaintiff, and assess whether the complaint and the exhibits attached to it 'contain enough facts to state a claim to relief that is plausible on its face.'" *Wilson v. USI Ins. Serv. LLC*, 57 F.4th 131, 140 (3d Cir. 2023) (quoting *Watters v. Bd. of Sch. Directors of City of Scranton*, 975 F.3d 406, 412 (3d Cir. 2020)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Clark v. Coupe*, 55 F.4th 167, 178 (3d Cir. 2022) (quoting *Mammana v. Fed. Bureau of Prisons*, 934 F.3d 368, 372 (3d Cir. 2019)). When assessing the factual allegations in a complaint, courts "disregard legal conclusions and recitals of the elements of a cause of action that are supported only by mere conclusory statements." *Wilson*, 57 F.4th at 140 (citing *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 903 (3d Cir. 2021)). The defendant bringing a Rule 12(b)(6) motion bears the burden of "showing that a complaint fails to state a claim." *In re Plavix Mktg., Sales Pracs. & Prod. Liab. Litig. (No. II)*, 974 F.3d 228, 231 (3d Cir. 2020) (citing *Davis v. Wells Fargo*, 824 F.3d 333, 349 (3d Cir. 2016)).

### C. Law of the Case

The law-of-the-case doctrine typically "dictates that 'when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'" *Mack v. Yost*, 63 F.4th 211, 231 (3d Cir. 2023) (quoting *Farina v. Nokia Inc.*, 625 F.3d 97, 117 n.21 (3d Cir. 2010)). "The doctrine 'only applies within the same case' and affects only issues that were 'expressly' or 'necessarily resolved' by prior decisions in the same case." *Home Depot USA, Inc. v. Lafarge N. Am., Inc.*, 59 F.4th 55, 61 (3d Cir. 2023) (first quoting *Farina*, 625 F.3d at 117 n.21; and then quoting *PDX N., Inc. v. Comm'r New Jersey Dep't of Lab. & Workforce Dev.*, 978 F.3d 871, 881 n.10 (3d Cir. 2020)). Law of the case "is discretionary," and it "does not prevent[] a district court from reconsidering its prior rulings," even if it "may counsel against it." *Saint-Jean v. Palisades Interstate Park Comm'n*, 49 F.4th 830, 836 (3d Cir. 2022) (citing *Arizona v. California*, 460 U.S. 605, 618 (1983)).

## III.   DISCUSSION

### A. Count I – Breach of Contract

In previously finding that Magic was not entitled to seek relief governed by the terms of the leases that T-Mobile and the Landlords had entered into (and, therefore, Magic did not have standing thereunder), the Court underscored that Magic had not alleged that it was a party to any of the leases nor did Magic allege that the Landlords had assigned their rights to or specifically authorized Magic to pursue via legal action the compensation T-Mobile allegedly owes the Landlords. (ECF No. 19 at 9-11 (citing *Bel-Ray Co. v. Chemrite (Pty) Ltd.*, 181 F.3d 435, 445 (3d Cir. 1999) ("Generally, of course, an agent of a disclosed principal, even one who negotiates and signs a contract for her principal, does not become a party to the contract.")).)

Magic's Amended Complaint attempts to remedy that standing defect by alleging that, *after* the Court dismissed the original Complaint, "several Landlords . . . specifically authorized Magic

5

to seek compensation pursuant to the Leases through legal action on their behalf." (ECF No. 21 ¶ 135.)  Phrased differently, Magic alleges that certain unidentified Landlords (as principals) have now authorized Magic (as agent) to sue for reimbursements allegedly owed to the Landlords under the leases that were entered into between T-Mobile and the Landlords for the installation and operation of T-Mobile's telecommunications equipment on the Landlords' property.  Magic submits that, as a result, it "has standing . . . to pursue claims on behalf of all Landlords who have provided or hereafter provide to Magic such Specific Authorizations." (*Id.* ¶¶ 136-37.)

T-Mobile counters by arguing that the Court's prior determination that Magic lacked standing to assert contract claims stemming from the Landlords' leases cannot be cured by later-acquired agency agreements. (ECF No. 22-2 at 18.)  T-Mobile cites *Cortlandt St. Recovery Corp. v. Hellas Telecommunications, S.a.r.l* for the proposition that "[a] court may not permit an action to continue, even where the jurisdictional deficiencies have been subsequently cured, 'if jurisdiction [was] lacking at the commencement of a suit . . . .'" 790 F.3d 411, 422 (2d Cir. 2015) (quoting *Disability Advocs., Inc. v. New York Coal. for Quality Assisted Living, Inc.*, 675 F.3d 149, 160 (2d Cir. 2012)).

In *Cortlandt*, the plaintiff was a corporation attempting to collect a large sum owed under subordinated notes issued by a then-dissolved entity. *Id.* at 415.  Plaintiff brought suit as the purported assignee of the notes for breach of contract, among other claims. *Id.*  The district court eventually dismissed the plaintiff's claims on the basis that the court lacked subject matter jurisdiction because the plaintiff had failed to adequately plead title to claims arising under the notes, as required for Article III standing. *Id.* at 416.  On appeal, the plaintiff argued that the district court had erred by not granting an opportunity for the plaintiff to cure any standing defect via Rule 17(a)(3), which allows for "the real party in interest to ratify, join, or be substituted into" a pending action. *Id.* at 420 (quoting Fed. R. Civ. P. 17(a)(3)).

The United States Court of Appeals for the Second Circuit affirmed the dismissal. It was undisputed that the noteholders could have assigned their claims to the plaintiff and this could have established standing, and the dispute was over whether the noteholders had actually done so. *Id.* at 418. The Second Circuit held that the plaintiff had not carried its burden of showing a valid assignment sufficient for the plaintiff to establish standing to bring suit in its own name. *Id.* The Court emphasized that language in a purported assignment that grants a party the right to pursue claims on another's behalf but "does not transfer ownership of claims, is, on its own, 'insufficient to permit [a purported assignee] to sue on those claims in its name.'" *Id.* at 419 (quoting *Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 18 (2d Cir. 1997)).

In so holding, the Second Circuit explained that district courts in that Circuit had allowed plaintiffs to use Rule 17(a)(3) to remedy defects in standing "where the plaintiff clearly had standing on another claim that it brought." *Id.* at 422-23 (citations omitted). The *Cortlandt* Court found, however, that any further attempt to cure standing in the case before it pursuant to Rule 17 would have been futile because (i) substituting the noteholders in place of the named plaintiff would have destroyed diversity jurisdiction, and (ii) if the plaintiff were granted leave to try to obtain a new assignment from the noteholders, this event "would require more than a 'merely formal' alteration of the complaint," and the use of Rule 17(a)(3) to achieve such an end would have been improper. *Id.* at 423-25 (quoting *Advanced Magnetics*, 106 F.3d at 20).

In opposition, Plaintiff does not address *Cortlandt* or the other case law cited by Defendant and, instead, simply argues that T-Mobile's argument that Magic's lack of standing is not curable is "directly contrary to the Court's ruling that permitted Magic to file an Amended Complaint."[4]

---

[4]     Although the Court previously granted Magic leave to amend, it wrote "that Magic face[d] significant legal hurdles moving forward" and such leave did not necessarily mean that a lack of standing for a contract claim *could* be cured. (ECF No. 19 at 19.) T-Mobile is correct that the general proposition of law, as stated in *Cortlandt*, is that "[t]he existence of federal jurisdiction

(ECF No. 38 at 34.)

Here, it does not make a meaningful difference whether or not the Court considers the post-filing actions pled in the Amended Complaint, because in either scenario, Plaintiff's breach of contract claim fails for lack of standing.

Critically, Magic seeks to bring the breach of contract claim against T-Mobile as an authorized agent of "several Landlords" that entered into leases with T-Mobile, but Magic does not identify these Landlords, how many of them Magic allegedly represents, the precise date that they authorized Magic to be their agent for purposes of the present litigation (other than that the authorization was purportedly granted sometime after Magic's original Complaint was dismissed), nor does Magic provide the terms of the authorizations. (ECF No. 21 ¶¶ 135-40 ("[S]everal Landlords amended their Agency Authorization with Magic and specifically authorized Magic to seek compensation pursuant to the Leases through legal action on their behalf.").) Magic also does not allege that it was assigned title/ownership of the Landlords' claims under the leases. Such conclusory assertions related to a right to sue "as the authorized agent of various principals" (*id.* ¶ 1) without identifying the principals or furnishing factual allegations to support the conclusion that agency was actually granted is insufficient to show standing. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) ("To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" (quoting *Lujan*, 504 U.S. at 560)); *see also Flast v.*

---

ordinarily depends on the facts *as they exist when the complaint is filed.*" *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 569 n.4 (1992) (emphasis in original) (quoting *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 830 (1989)); *see also Keene Corp. v. United States*, 508 U.S. 200, 207 (1993) ("[T]he longstanding principle that 'the jurisdiction of the Court depends upon the state of things at the time of the action brought.'" (quoting *Mollan v. Torrance*, 22 U.S. 537, 539 (1824))). Nevertheless, there are instances when courts have allowed a plaintiff that lacked standing at the time of filing to remedy the jurisdictional defect by pleading allegations related to post-complaint actions. *See Garrett v. Wexford Health*, 938 F.3d 69, 83 (3d Cir. 2019).

*Cohen*, 392 U.S. 83, 99–100 (1968) (explaining that "when standing is placed in issue in a case, the question is whether the person whose standing is challenged is a proper party to request an adjudication of a particular issue").

Indeed, failing to identify any of the Landlords on whose behalf Magic, as an agent, is supposedly attempting to bring suit is contrary to fundamental tenets of fairness that entitle T-Mobile, like any other defendant, to know who is making a claim against it. *See Doe v. Megless*, 654 F.3d 404, 408 (3d Cir. 2011) ("'Identifying the parties to the proceeding is an important dimension of publicness. The people have a right to know who is using their courts.' And, defendants have a right to confront their accusers." (first quoting *Doe v. Blue Cross & Blue Shield United of Wisconsin*, 112 F.3d 869, 872 (7th Cir. 1997); and then citing Fed. R. Civ. P. 10(a))); *Frazier v. Se. Pennsylvania Transp. Auth.*, Civ. No. 84-2950, 1989 WL 46206, at *1 (E.D. Pa. Apr. 26, 1989) ("It is a principle of fundamental fairness that a defendant has a right to know who is making a claim against it and the nature of the claim in order to defend itself.").

Moreover, in the agency context (where the principal retains ownership of the claim but authorizes an agent to sue on the principal's behalf), courts have emphasized that an agent cannot typically bring the claim in its own name, as Magic attempts to do in the present case, but must bring the claim in the *name of the principal*.[5] *See, e.g.*, *Choi v. Kim*, 50 F.3d 244, 247 (3d Cir. 1995) (holding that real party in interest is the principal and not the agent).

---

[5]     Although of less direct relevance here, federal courts have also dismissed pleadings in the Medicare context for lack of standing where the identity of at least some of the alleged assignors has not been made known. *See, e.g.*, *MSP Recovery Claims, Series LLC v. Am. Fam. Connect Prop. & Cas. Ins. Co.*, Civ. No. 23-20132, 2023 WL 3276792, at *3 (S.D. Fla. May 5, 2023) (noting that, among other defects, the plaintiff "fail[ed] to plead the identity of its alleged assignor" and finding that, "[b]ased on these deficiencies, . . . [the plaintiff] ha[d] not provided sufficient factual pleadings to support the existence of an assignment and, therefore, its own standing" (collecting cases)); *MAO-MSO Recovery II, LLC v. Nationwide Mut. Ins. Co.*, Civ. No. 17-164, 2018 WL 4941111, at *3 (S.D. Ohio Feb. 28, 2018) (granting motion to dismiss where the complaint provided "no information about the assignors, including the identity of the assignors

In *Am. Orthopedic & Sports Med. v. Indep. Blue Cross Blue Shield*, the United States Court of Appeals for the Third Circuit explained that a principal "may confer on his agent the authority to assert [a] claim on his behalf" but such authorization "does [not] strip [the principal] of his own interest in his claim."  890 F.3d 445, 455 (3d Cir. 2018).  The Third Circuit proceeded to cite support from the United States Supreme Court and other federal Courts of Appeals for the proposition that authorizing an agent to sue does not confer on the agent a right to sue "in his own name" because, unlike assignments, it "does not transfer an ownership interest in the claim" but "simply confers on the agent the authority to act 'on behalf of the principal.'"  *Id.* (first quoting *W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 107 (2d Cir. 2008); then quoting *In re Complaint of Bankers Tr. Co.*, 752 F.2d 874, 881 (3d Cir. 1984); and then quoting *Titus v. Wallick*, 306 U.S. 282, 289 (1939))); *see also* Fed. R. Civ. P. 17(a) ("An action must be prosecuted in the name of the real party in interest."); Wright & Miller, 6A Fed. Prac. & Proc. Civ. § 1545 (3d ed. Apr. 2003) ("[F]ederal courts have held that an assignee for purposes of collection who holds legal title to the debt according to the governing substantive law is the real party in interest even though the assignee must account to the assignor for whatever is recovered in the action. . . .  On the other hand, the mere transfer of a general power of attorney or a transfer without consideration, but merely for the convenience of the parties does not create a sufficient interest or right in the chose and the grantor of the power remains the only real party in interest."); 25 Fed. Proc., L. Ed. § 59:44 (June 2023) ("One who is an agent . . . merely for the purpose of

---

. . . , the dates of the assignments, or the specific language included in the assignments"). *Cf. MSP Recovery Claims, Series, LLC v. Sanofi-Aventis U.S. LLC*, Civ. No. 18-2211, 2020 WL 831578, at *6 (D.N.J. Feb. 20, 2020) (allowing claims from unnamed assignors to proceed where plaintiff had identified three exemplar assignors and the court had previously found that plaintiff had sufficiently pled claims of assignment as to those exemplars).

bringing suit is not a real party in interest and, accordingly, cannot conduct litigation in its own name.").

Here, Plaintiff has not alleged that the "several Landlords" have assigned to Magic "legal title" or ownership of the debt/claim to enable Magic to sue T-Mobile for breach of contract in Magic's own name, and the only opinion that Magic cites in its memorandum of law in support of its contention that it "has cured the alleged deficiency of authorization and, therefore, standing" is *Harper-Lawrence, Inc. v. United Merchants & Mfrs., Inc.*, wherein New Jersey's Appellate Division held that, "[i]n the absence of specific authorization, an agent . . . cannot sue in his own name to recover compensation due to his principal." 619 A.2d 623, 629 (N.J. Super. Ct. App. Div. 1993). The primary judicial opinion cited in *Harper* for this statement is *Greten v. Passaic-Bergen Bottle Co.*, from the earlier New Jersey Court of Errors and Appeals, which states that, "[o]rdinarily, a person who is an attorney in fact or an agent authorized to sue on behalf of his principal, but who is without personal interest in the litigation, *may sue only in the name of the principal and not in his own name*." 15 A.2d 644, 646 (N.J. E. & A. 1940) (emphasis added) (quoting 3 Corpus Juris Secundum, Agency § 303).

These New Jersey opinions[6] do not undermine the basic premise advanced by T-Mobile that Magic has failed to adequately plead standing when, among other defects, Magic (as agent) has not pled the identity of the Landlords (as principals) that purportedly authorized Magic to sue

---

[6]     T-Mobile argues that New York law should apply to the breach of contract claim because Magic seeks to bring suit on behalf of New York City Landlords under the leases entered into with T-Mobile, and these leases are governed by the laws of the state where the buildings are located. (ECF No. 22-2 at 20-21 n.2.) Magic does not concede the application of New York law nor contest it, writing that it is meeting T-Mobile's contention that New York law applies to the claim "at face value in opposing" the motion to dismiss. (ECF No. 38 at 34-35.) In any event, New York law also does not ordinarily vest an agent with the right to sue on behalf of the principal in the agent's own name. *See, e.g., Titus*, 306 U.S. at 289 ("[A] power of attorney to sue, standing alone, does not under the New York law operate as an assignment to vest the attorney with such title or interest as will enable him to maintain the suit in his own name . . . .").

11

T-Mobile on their behalf.  Magic has also failed to explain or cite any authority that supports the conclusion that, in the absence of allegations of a valid assignment, it has a right to sue in its own name for breaches of the underlying leases between the Landlords and T-Mobile instead of in the name of the "several Landlords" that "authorized Magic to seek compensation pursuant to the Leases through legal action on their behalf."[7]  (ECF No. 21 ¶ 135.)

Accordingly, the Court finds that Magic has not established its standing for the breach of contract claim brought on behalf of the unidentified Landlords, and Count I of Plaintiff's Amended Complaint is dismissed without prejudice.

### B.  Count II – Tortious Interference with Present and Prospective Business Relations[8]

In the Court's prior opinion, it found that Magic's allegations in the original Complaint did not suffice to state a claim against T-Mobile for tortious interference with existing or prospective business relations for two reasons:

*First,* Magic did "not plead facts that demonstrate[d] T-Mobile's conduct actually interfered with [Magic's] present or prospective relationships" with Landlords.  (ECF No. 19 at 12.)  Magic asserted in only "conclusory terms that 'T-Mobile had to destroy Magic's business relationship with its current and future clients'" and that "'but for the conduct of T-Mobile . . . Magic would have obtained hundreds of new Landlord clients.'"  (*Id.*)  The Court explained that "[s]uch vague and conclusory allegations are insufficient."  (*Id.* (citing *Nostrame v. Santiago*, 61 A.3d 893, 904-05 (N.J. 2013)).)

---

[7]     T-Mobile also argues that the breach of contract claim should be dismissed for lack of standing because, under both New York and New Jersey law, a limited liability company such as Magic cannot serve as an attorney-in-fact.  (ECF No. 22-2 at 19-20.)  Because the Court is dismissing the claim for the reasons outlined, it does not reach this argument.

[8]     For purposes of motion practice, "the parties agree[d] that New Jersey law applies" to Magic's common law claims brought on its own behalf, and the parties do not dispute that in their most recent briefing.  (ECF No. 19 at 12 n.2.)

*Second*, Magic did not "establish that T-Mobile acted with malice, or without legal justification, in pursuing its understanding of its rights under the Leases." (*Id.* at 13.)  The Court found that T-Mobile, "by denying the reimbursement claims of the Landlords made through Magic, . . . merely invoked contractual rights under the Leases to which [T-Mobile] believes it is entitled.  Such action in furtherance of its position under the Leases does not amount to malicious conduct." (*Id.* (citing *Dello Russo v. Nagel*, 817 A.2d 426, 434 (N.J. Super. Ct. App. Div. 2003)).) The Court also found that Magic's claim that "T-Mobile acted maliciously by directly communicating with the Landlords despite [T-Mobile's] knowledge of the agency agreements" was insufficient because "nothing in the agency agreements prohibited T-Mobile from contacting the Landlords directly, particularly since T-Mobile has a contractual relationship with the Landlords." (*Id.*)  Even viewing the allegations in totality, the Court determined that nothing showed that T-Mobile acted without legal justification because "[t]he underlying contractual relationships between T-Mobile and the Landlords provides a legitimate basis for T-Mobile's course of action in challenging the reimbursement claims, regardless of whether [T-Mobile's] interpretation of the Leases is ultimately correct. (*Id.* at 14.)  Moreover, Magic [had] not point[ed] to any language or representations in the letter issued directly to the Landlords giving rise to the inference [of] 'devious, improper [or] unrighteous' tactics on T-Mobile's part." (*Id.* (citing *Hong Kong Ibesttouch Tech. Co. v. iDistribute LLC*, Civ. No. 17-2441, 2018 WL 2427128, at *4 (D.N.J. May 30, 2018)).)

Magic now incorporates about a dozen new paragraphs in the Amended Complaint intended to bolster its tortious interference claim.  (ECF No. 38 at 38 ("The Amended Complaint goes even further to include new allegations at paragraphs 149 through 161 that further address these elements.").)  In these paragraphs, Plaintiff tries to address the Court's finding that Magic had not plausibly pled that T-Mobile interfered with Magic's present or prospective business

relationships with Landlords by alleging that (i) "some of the Landlords with whom Magic had Agency Authorizations terminated Magic's right to act on their behalf and informed Magic that [they] held Magic responsible for any damage with the Landlords' business relationship with T-Mobile and that the Landlords believed Magic was responsible for any liability owed by the Landlords to T-Mobile for property tax reimbursements made to them by T-Mobile" (ECF No. 21 ¶ 160), and (ii) "Landlords who were in discussions with [Magic] to enter an Agency Authorization, refused or . . . failed to do so after learning that T-Mobile was asserting that Magic was submitting claims by mistake . . . and those Landlords who had received property tax reimbursements were going to have to pay back the money to T-Mobile, going back up to 10 years" (*id.* ¶ 161).

These allegations, which do not identify a specific Landlord that actually terminated an Agency Authorization nor a specific Landlord that opted not to enter into an Agency Authorization due to T-Mobile's alleged actions, remain vague, and courts in this Circuit have held that claims for tortious interference must plead the existence and identity of at least a single, specific customer lost as a result of the alleged interference. *See, e.g.*, *Am. Millennium Ins. Co. v. First Keystone Risk Retention Grp., Inc.*, 332 F. App'x 787, 790 (3d Cir. 2009) ("As for tortious interference, we agree with the reasoning of the District Court and its conclusion that [plaintiff] failed to plead the claim with the requisite specificity.  In particular, we note that [plaintiff's] complaint fails to identify a single, specific customer that [plaintiff] either lost or could have acquired but for [defendant's] conduct."  (citing *Printing Mart–Morristown v. Sharp Electronics Corp.,* 563 A.2d 31, 37 (N.J. 1989))); *MedWell, LLC v. Cigna Corp.*, Civ. No. 20-10627, 2023 WL 4045089, at *5 (D.N.J. June 16, 2023) ("Plaintiff inadequately alleges the loss of business relationships with an unknown group of patients.  Indeed, Plaintiff does not identify any individual from whom it anticipates payments."); *Tiger Supplies Inc. v. MAV Assocs. LLC*, Civ. No. 20-15566, 2022 WL

1830796, at *8 (D.N.J. June 3, 2022) ("[A]t the very least, the plaintiff must identify 'a single, specific customer' it either lost or could have acquired but for the defendant's conduct." (citations omitted)); *New Jersey Physicians United Reciprocal Exch. v. Boynton & Boynton, Inc.*, 141 F. Supp. 3d 298, 310 (D.N.J. 2015) ("[The] vague allegation that unknown, prospective customers may have been lost [is not] sufficient to survive dismissal."); *Novartis Pharms. Corp. v. Bausch & Lomb, Inc.*, Civ. No. 07-5945, 2008 WL 4911868, at *7 (D.N.J. Nov. 13, 2008) (dismissing tortious interference claim where plaintiff did "not identify one physician, company, or other entity, with whom it currently does business, or has the reasonable expectation of doing business in the future").

The Court recognizes that there is a line of cases that do not require a plaintiff at the pleading stage to identify a specific customer or business relationship lost to maintain claims for tortious interference, *see, e.g.*, *Syncsort Inc. v. Innovative Routines Int'l, Inc.*, Civ. No. 04-3623, 2005 WL 1076043, at *12 (D.N.J. May 6, 2005), and *Teva Pharm. Indus., Ltd. v. Apotex, Inc.*, Civ. No. 07-5514, 2008 WL 3413862, at *9 (D.N.J. Aug. 8, 2008), but many of these cases predate the United States Supreme Court's opinions in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), which "call[] for enough fact to raise a reasonable expectation that discovery will reveal evidence" of the necessary element. *Twombly*, 550 U.S. at 556; *see also Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008).

Relying on the Supreme Court's opinions in *Twombly/Iqbal*, many district courts that have recently considered tortious interference claims have disregarded this earlier line of more lenient cases and ruled that a plaintiff must identify specific customers and/or business relationships lost as a result of the interference in order to survive a motion to dismiss for failure to state a claim. *See MedWell*, 2023 WL 4045089, at *5 n.7 ("[T]he cases cited by Plaintiff are inapposite. . . . Five of the cases apply the lenient notice pleading standard, rather than the more stringent standard set

15

out in *Twombly* and *Iqbal*."); *CMC Food, Inc. v. Mitlitsky Eggs, LLC*, Civ. No. 18-8939, 2019 WL

5206104, at *8 n.12 (D.N.J. Oct. 16, 2019) ("[Plaintiff] cites a line of cases in which courts have

stated that a plaintiff need not identify specific customers or lost business opportunities to plead a

claim for tortious interference. . . .  The Court is not persuaded by these decisions because they

were rendered before the Supreme Court clarified the level of specificity required . . . in . . .

*Twombly* . . . and *Iqbal*, which 'caused a sea change in the pleading practices in federal court.'"

(quoting *Tyco Fire Prod. LP v. Victaulic Co.*, 777 F. Supp. 2d 893, 895 (E.D. Pa. 2011))); *Hong*

*Kong Ibesttouch*, 2018 WL 2427128, at *4 ("Simply stating that it will lose prospective customers

. . . runs afoul [of] the pleading standard of *Twombly*."); *Advanced Oral Techs., L.L.C. v. Nutres*

*Rsch., Inc.*, Civ. No. 10-5303, 2011 WL 198029, at *9 (D.N.J. Jan. 20, 2011) (finding that the

plaintiff's allegation that, as a result of defendant's interference, plaintiff "ha[d] lost and will

continue to lose substantial business from existing and prospective customers" was insufficient to

meet the *Iqbal* and *Twombly* pleading standard).

    In view of this precedent, the Court is not persuaded that Plaintiff has adequately pled that

T-Mobile's alleged conduct interfered with Magic's present or prospective business relationships

with the Landlords.  The chief failing is that no Landlord is actually identified and the allegations

refer generically to "some of the Landlords" who allegedly terminated their Agency

Authorizations with Magic without pleading specific facts in support thereof.  (ECF No. 21 ¶¶

160-61.)  However, even if the Court were to find these allegations sufficient at the pleading stage

to establish that T-Mobile interfered with Magic's protected interest in its present and prospective

business relationships, the claim would still fail because Magic has not pled facts that could

establish T-Mobile acted with malice.

    Under New Jersey law, malicious interference requires a plaintiff to allege facts that

demonstrate "that the harm was inflicted intentionally and without justification or excuse."

16

*Printing Mart-Morristown*, 563 A.2d at 37 (citing *Rainier's Dairies v. Raritan Val. Farms*, 117 A.2d 889, 895 (N.J. 1955)). To qualify, "conduct must be both 'injurious and transgressive of generally accepted standards of common morality or of law.'" *Lamorte Burns & Co. v. Walters*, 770 A.2d 1158, 1170-71 (N.J. 2001) (quoting *Harper-Lawrence, Inc.*, 619 A.2d at 630); *see also Nostrame*, 61 A.3d at 901 ("[L]iability rests upon whether the interfering act is intentional and improper.").

Malice "is determined on an individualized basis, . . . viewing the defendant's actions in the context of the facts presented," and it is "[o]ften . . . stated that the relevant inquiry is whether the conduct was sanctioned by the 'rules of the game.'" *Lamorte Burns & Co.*, 770 A.2d at 1170 (citing *Ideal Dairy Farms, Inc. v. Farmland Dairy Farms, Inc.*, 659 A.2d 904, 932 (N.J. Super. Ct. App. Div. 1995)). Most clearly, "conduct that is fraudulent, dishonest, or illegal" amounts to tortious interference. *Id.* at 1171; *see also Harris v. Perl*, 197 A.2d 359, 363 (N.J. 1964) ("But if the act complained of does not rest upon some legitimate interest or if there is sharp dealing or overreaching or other conduct below the behavior of fair men similarly situated, the ensuing loss should be redressed.").

Here, Magic argues that the new paragraphs in the Amended Complaint demonstrate that T-Mobile acted with malice because they allege that "the drastic change in T-Mobile's position concerning the reimbursement to Landlords of the monies alleged to be due and owing could be . . . seen for exactly what it is – not a change because there is legal support, but a change because it is what is in [T-Mobile's] immediate best interest . . . .  Moreover, the fact that T-Mobile has further made efforts to have those monies previously paid reimbursed is . . . further evidence of their efforts to retreat on a decade long position . . . to prevent further payouts on properly submitted claims." (ECF No. 38 at 38.) In other words, Magic wants this Court to find that the allegations that T-Mobile slow-rolled and then denied the claims submitted was done with malice

because it was for T-Mobile's economic benefit at the expense of Magic's relationships with the Landlords. (*See also* ECF No. 21 ¶¶ 149-59.)

Although framed slightly differently than before, these new allegations in the Amended Complaint are effectively a reiteration of those allegations in the original Complaint that the Court found insufficient to establish that T-Mobile acted with malice. The fact that T-Mobile may have sought to economically advantage itself by interpreting the lease agreements in a manner that allowed T-Mobile to deny the claims Magic submitted does not plausibly support the inference that T-Mobile wrongfully interfered in the relationship between the Landlords and Magic. *See Dello Russo*, 817 A.2d at 434 ("[T]he fact that a breaching party acted 'to advance [its] own interest and financial position' does not establish the necessary malice or wrongful conduct." (quoting *Sandler v. Lawn-A-Mat Chem. & Equip. Corp.*, 358 A.2d 805, 813 (N.J. Super. Ct. App. Div. 1976))).

Indeed, even if T-Mobile's interpretation of the leases were at some point held to have been incorrect and it is determined that T-Mobile owes the Landlords for unpaid reimbursements, this would not give rise to a claim sounding in tort because T-Mobile had its own equal contractual right to interpret and perform under the leases. *See 1 Reliable Transportation, Inc. v. Trader Joe's Co., Inc.*, 2020 WL 4279789, at *5 (N.J. Super. Ct. App. Div. July 27, 2020) ("Significantly, an act that is done in the exercise of an equal or superior right cannot support a claim of tortious interference. A party's exercise of a right 'constitute[s] ample justification for its action and cannot result in the imposition of tort liability.'" (quoting *Kopp, Inc. v. United Techs., Inc.*, 539 A.2d 309, 315 (N.J. Super. Ct. App. Div. 1988))). As the Court previously wrote, "[t]he underlying contractual relationships between T-Mobile and the Landlords provides a legitimate basis for T-Mobile's course of action . . . , regardless of whether its interpretation of the Leases is ultimately correct." (ECF No. 19 at 14.) Further, Magic has not explained how T-Mobile's decision to audit

the claims Magic submitted and then to deny the claims and/or seek to claw back monies T-Mobile

claims to have paid in error was not in keeping with the "rules of the game" or exceeded standard

business morality. *See, e.g.*, *Bedwell Co. v. Camden Cnty. Improvement Auth.*, Civ. No. 14-1531,

2014 WL 3499581, at *4 (D.N.J. July 14, 2014) (dismissing tortious interference claims where

"[h]ow [alleged] conduct exceed[ed] standard business morality . . . [wa]s unexplained").

Accordingly, because Magic has again failed to plead facts that demonstrate that T-Mobile

interfered with either Magic's present or prospective business relationships or that T-Mobile acted

with malice and without legal justification, the tortious interference claim in Count II of Plaintiff's

Amended Complaint is dismissed without prejudice for failure to state a claim.

### C.  Count III – Defamation and Commercial Disparagement

The Court previously found that two statements allegedly made by T-Mobile did not

"amount[] to defamation or commercial disparagement, as Magic [could not] show that the

statements were false or made with malicious intent." (ECF No. 19 at 16.)  The first alleged

statement was T-Mobile's "claim[] to Magic's clients that Magic had presented 'invoices' to T-

Mobile when, in fact, Magic had submitted detailed and comprehensive Claim Packages." (*Id.*)

The second was "that, in T-Mobile's March 28-31 letters to the Landlords, T-Mobile falsely

asserted that 'T-Mobile believe[d] the invoice was issued in error' by Magic." (*Id.*)

The Court ruled that both statements were "nonactionable opinion, as opposed to 'specific

factual assertions that could be proven true or false.'" (*Id.* (quoting *Ward v. Zelikovsky*, 643 A.2d

972, 979 (N.J. 1994)).)  The Court reasoned:

> With respect to the first statement, Magic fails to allege, and the
> Court is unable to find, a meaningful difference between the term
> "invoice" and "Claim Package."  Further, Magic fails to set forth
> how T-Mobile's characterization of its work product as an "invoice"
> would "expose[ ] [Magic] to hatred, contempt or ridicule or subject[
> ] [Magic] to a loss of the good will and confidence" of its
> clients. *Higgins*, 158 N.J. at 426 (internal quotations omitted).  As

19

> to the second statement, T-Mobile's assertion that it "believes the
> invoice was issued in error" is plainly an expression of opinion as to
> its liability under the Leases, as indicated by the express use of the
> term "believe."   Additionally, aside from Magic's conclusory
> assertion that the statements were made "maliciously," nothing in
> the Complaint indicates malicious intent on the part of T-Mobile
> towards Magic via the letters.   Rather, the allegations demonstrate
> that T-Mobile assumed a course of action that it determined was its
> contractual right under the Leases.   The fact that Magic's business
> was incidentally harmed by the alleged conduct does not amount to
> malice for purposes of defamation and commercial disparagement
> claims.
>
> Magic argues, without citation to authority, that any
> defamation analysis is "premature" at this time and can only proceed
> "following the completion of discovery" as a matter "for the jury to
> decide." Pl. Opp. 30, 33.   But, as stated above, whether a statement
> is defamatory is "a question of law for the court." *Ward*, 136 N.J.
> at 529.   Because Magic fails to plead facts demonstrating that the
> statements in question were false and malicious, Magic's claims for
> defamation and commercial disparagement cannot survive T-
> Mobile's motion to dismiss.

[(*Id.* at 16-17.)]

Magic does not identify new or different statements that it alleges were defamatory in its

Amended Complaint.   Instead, it inserts bald argument, pleading that, "[c]ontrary to the Court's

Opinion, . . . T-Mobile's statement that Magic submitted an 'invoice' was a knowingly false

statement" because "T-Mobile knew that Magic, in fact, never provided an 'invoice' but instead

submitted a comprehensive claim package that was . . . standard in the industry to support such

property tax reimbursement claims" and, "[c]ontrary to the Court's Opinion, . . . T-Mobile's

statement that 'T-Mobile believes the invoice was issued in error' was a knowingly false

statement" because "T-Mobile . . . knew that: 1) an entire claims package (with no invoice) was

submitted; and, 2) Magic did not submit the claim 'in error.'" (ECF No. 21 ¶¶ 166-71.)   Magic is

adamant that these statements were "intended to cause the Landlords . . . to conclude that Magic

was an incompetent company that did not know what it was doing." (*Id.* ¶¶ 168, 171.)

In Magic's single paragraph of argument in opposition to the motion to dismiss the defamation/disparagement claim, Magic does not grapple with the reasons the Court previously gave for finding the two statements alleged insufficient to maintain such a claim. (*See* ECF No. 38 at 39-40.)  Magic does not point to any source for a meaningful difference between the terms "invoice" and "claim package"; does not set forth how referring to Magic's "claim package" as an "invoice" would expose Magic to "hatred, contempt or ridicule or subject[ ] [Magic] to a loss of the good will and confidence"; does not persuasively explain how T-Mobile's assertion that it "*believe[d]* the invoice was issued in error" is anything other than a plain expression of opinion; and does not indicate how these two benign statements were made "maliciously." (*Id.* (emphasis added).)

Because Plaintiff's Amended Complaint does not identify any new statements that it alleges are defamatory/disparaging and because it does not plead facts or proffer arguments that provide a compelling reason for the Court to alter its analysis that found the two statements previously identified neither defamatory nor disparaging as a matter of law, the Court will not disturb its prior findings.  *See D'Antonio v. Borough of Allendale*, Civ. No. 16-816, 2021 WL 1221010, at *12 n.12 (D.N.J. Mar. 31, 2021) ("[T]he law of that case will not be disturbed by that court unless it appears that there are compelling reasons to do so.").  Magic's insistence that it can maintain a claim of defamation/commercial disparagement on the basis that its "claim package" should not have been referred to as an "invoice" and that T-Mobile should not have written that it "believe[d]" the invoices were issued "in error" is without substantive merit.  It is well settled that statements, like those alleged here, that contain at most minor inaccuracies or opinion do not suffice.  *See, e.g.*, *G.D. v. Kenny*, 15 A.3d 300, 310 (N.J. 2011) ("The law of defamation overlooks minor inaccuracies . . . ."  (citing *Masson v. New Yorker Mag., Inc.*, 501 U.S. 496, 516 (1991)));  *Ward*, 643 A.2d at 979 ("Opinion statements, in contrast, are generally not capable of proof of

truth or falsity because they reflect a person's state of mind.  Hence, opinion statements generally have received substantial protection under the law.").  Accordingly, Count III of the Amended Complaint is dismissed without prejudice for failure to state a claim.

### D.  Count IV – Promissory Estoppel

Finally, the Court previously dismissed Magic's promissory estoppel claim, which "essentially [sought] enforcement of T-Mobile's purported obligations to the Landlords under the Leases via promissory estoppel."  (ECF No. 19 at 17.)  In finding that the claim could not be maintained based on the original Complaint's allegations, the Court explained:

> . . . Magic's promissory estoppel claim fails for a . . . fundamental reason:  Magic fails to plead facts supporting a clear and definitive promise by T-Mobile to pay the tax reimbursement claims, upon which Magic reasonably relied.  "Indefinite promises or promises subject to change by the promisor are not 'clear and definite' and cannot give rise to a claim for promissory estoppel." *Del Sontro v. Cendant Corp., Inc.*, 223 F. Supp. 2d 563, 574 (D.N.J. 2002) (citing *Aircarft Inventory Corp. v. Falcon Jet Corp.*, 18 F. Supp. 2d 409, 416 (D.N.J. 1998)).  Despite Magic's insistence that T-Mobile promised to pay the reimbursement claims through 'its repeated actions and words,' Magic also alleges that T-Mobile repeatedly stated that it was engaged in an audit of the tax reimbursement claims to assess their accuracy and validity. *See* Compl. ¶¶ 52, 60, 66, 91, 101-07.  These allegations are incompatible.  Indeed, on January 21, 2022, T-Mobile's Director of the Network Supply Chain & Partner Management Department allegedly informed Magic that "T-Mobile is looking into the validity and accuracy of the back tax billings and will advise when we have concluded our review." Compl. ¶ 91.  T-Mobile maintained the same posture in February 2022, when it stated multiple times that the tax reimbursement claims were still under review.  Compl. ¶¶ 101, 106.  As such, T-Mobile's representations with respect to the reimbursement claims were plainly "subject to change" dependent on the outcome of the review.  For the same reasons, any reliance on Magic's part was unreasonable as 'reliance upon a mere expression of future intention cannot be 'reasonable,' because such expressions do not constitute a sufficiently definite promise." *Del Sontro*, 223 F. Supp. 2d at 576 (quoting *In re Phillips Petroleum Sec. Litig.*, 881 F.2d 1236, 1250 (3d Circ. 1989)).  Furthermore, insofar as Magic alleges that T-Mobile's past "words and actions" in connection with having previously approved and paid tax reimbursements give rise to a

> promissory estoppel claim, the premise is misguided. *See* Compl. ¶
> 150.    T-Mobile's  prior  approval  and  payment  of  certain
> reimbursement  claims  amount  to  transactions  with  the  Landlords,
> governed solely by the terms of the Leases—not a promise to Magic.
> Because Magic fails to allege an unconditional promise sufficient to
> state a claim for promissory estoppel, its claim is dismissed.

[(*Id.* at 18-19.)]

In its Amended Complaint, Magic does little to address the defect identified by the Court.

Magic merely asserts, in conclusory fashion, that "T-Mobile, on several occasions both orally and

in writing made a clear and definitive representation to Magic that the claims it submitted on behalf

of its clients . . . were complete, accurate, and would be paid." (ECF No. 21 ¶¶ 180-81; ECF No.

38 at 40.)  Such threadbare allegations that recite one of the elements but do not contain specific

factual matter that raises a reasonable expectation that discovery will reveal evidence in support

thereof runs afoul of the pleading standard.  *See, e.g.*, *Fernandes v. Deutsche Bank Nat'l Tr. Co.*,

157 F. Supp. 3d 383, 388 (D.N.J. 2015) ("These circumstances reflect little more than an ongoing

exchange  of *indefinite*  promises,  and  therefore  fall  far  short  of  a  probable  showing  of  a

'clear and definite' promise."  (emphasis in original) (quoting *Nye v. Ingersoll Rand Co.*, 783 F.

Supp. 2d 751, 766 (D.N.J. 2011))); *Gunvalson v. PTC Therapeutics Inc.*, 303 F. App'x 128, 130

(3d Cir. 2008) (holding that plaintiffs could not demonstrate clear and definite promise where

alleged "promises . . . lack[ed] the requisite specificity and clarity" and did not "assert[] [any]thing

conclusive").

Particularly  where,  as  here,  the  newly-asserted,  conclusory  allegation  of  a  "clear  and

definite" promise is undermined by Magic's own factual allegations – that T-Mobile repeatedly

stated that it was reviewing the claims for accuracy and validity (*See* ECF No. 21 ¶¶ 52, 60, 66,

69, 91, 101-07) – there is no basis for finding that Magic has adequately pled a sufficiently definite

promise.  And Magic's failure to plead a clear and definite promise is fatal to its promissory

estoppel claim. *See Facteon, Inc. v. Comp Care Partners, LLC*, Civ. No. 13-6765, 2014 WL 6685380, at *6 (D.N.J. Nov. 26, 2014) ("A 'clear and definite promise' is an indispensable element of detrimental reliance." (citing *Malaker Corp. S'holders Protective Comm. v. First Jersey Nat'l Bank*, 395 A.2d 222, 230 (N.J. Super. Ct. App. Div. 1978))); *see also Ariotti v. Am. Leisure*, No. A-0991-16, 2018 WL 3796672, at *2 (N.J. Super. Ct. App. Div. Aug. 10, 2018) ("[A] 'clear and definite promise,' is the '*sine qua non* for applicability of this theory of recovery.'" (citation omitted)).

Accordingly, Count IV of Plaintiff's Amended Complaint is dismissed without prejudice for failure to state a claim.

### E.  Further Amended Complaint

Although the Court questions whether Magic can cure the defects detailed herein, and despite the fact that Magic did not request leave to amend in its opposition to T-Mobile's motion to dismiss, the Court will grant Magic one final opportunity to submit a further amended complaint within thirty (30) days. *See Gasoline Sales, Inc. v. Aero Oil Co.*, 39 F.3d 70, 74 (3d Cir. 1994) (noting that "three attempts at a proper pleading is enough").

## IV.  <u>CONCLUSION</u>

For the reasons set forth above, and other good cause shown, Defendant's Motion to Dismiss Plaintiff's Amended Complaint (ECF No. 22) is **GRANTED**.  An appropriate Order follows.

Dated:  July 31, 2023

_____
GEORGETTE CASTNER
UNITED STATES DISTRICT JUDGE