**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MAGIC REIMBURSEMENTS LLC,<br><br>Plaintiff,<br><br>v.<br><br>T-MOBILE USA, INC.,<br><br>Defendant. | Civil Action No. 22-02121 (GC) (TJB)<br><br>**OPINION** |

**CASTNER, U.S.D.J.**

  **THIS MATTER** comes before the Court upon Defendant T-Mobile USA, Inc.'s Motion to Dismiss Plaintiff Magic Reimbursements LLC's Second Amended Complaint pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). (ECF No. 45.) Plaintiff opposed, and Defendant replied. (ECF Nos. 50 & 51.) The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Rule 78(b) and Local Civil Rule 78.1(b). For the reasons set forth below, and other good cause shown, Defendant's motion is **GRANTED**.

**I. BACKGROUND**

  This Court has twice before written on motions to dismiss in this case, and it assumes the reader's familiarity with those opinions. (*See* ECF Nos. 19 & 40.)

  The dispute centers around Defendant T-Mobile USA, Inc.'s practice of entering into lease agreements with third-party building owners (the "Landlords") to install and operate cellular telecommunications equipment on the rooftops of the Landlords' properties. (ECF No. 44 ¶ 5.) Most of the leases contemplate that T-Mobile will reimburse the Landlords for certain state and

local taxes resulting from the addition of T-Mobile's equipment. (*Id.* ¶ 8.)

Plaintiff Magic Reimbursements LLC entered into agency agreements with various Landlords in New York City to assist the Landlords with submitting tax reimbursement claims to T-Mobile. (*Id.* ¶¶ 29, 36-37.) Despite an initial period when T-Mobile promptly processed the reimbursement claims submitted by Plaintiff on behalf of the Landlords, T-Mobile eventually began slow-rolling its processing and ultimately sent letters in March 2022 to the Landlords denying pending claims. (*Id.* ¶¶ 45-121.) Plaintiff alleges that T-Mobile sent these letters and denied pending claims in an attempt to undermine Plaintiff's business relationship with the Landlords. (*Id.* ¶ 133.)

On September 29, 2022, the Court dismissed Plaintiff's original Complaint without prejudice. (ECF Nos. 19.) The Court found that Plaintiff did not have standing to pursue contractual relief that belongs exclusively to the Landlords and failed to state claims for tortious interference with present and prospective business relations, defamation and commercial disparagement, as well as promissory estoppel. (*Id.* at 9-19.[1]) In granting leave to amend, the Court "note[d] that Magic face[d] significant legal hurdles moving forward." (*Id.* at 19.)

On July 31, 2023, the Court dismissed Plaintiff's Amended Complaint without prejudice. (ECF No. 40.) The Court found that Plaintiff did not have standing to assert its breach-of-contract claim and had again failed to state plausible claims for tortious interference, defamation and commercial disparagement, as well as promissory estoppel. (*Id.* at 5-24.) The Court granted "Magic one final opportunity to submit a further amended complaint." (*Id.* at 24.)

---

[1]   Page numbers for record cites (*i.e.*, "ECF Nos.") refer to the page numbers stamped by the Court's e-filing system and not the internal pagination of the parties.

On September 1, 2023, Plaintiff filed the Second Amended Complaint ("SAC"). (ECF No. 44.) The only claim amended in the SAC is Count II for tortious interference with present and prospective business relations. Plaintiff stands on its prior allegations for breach of contract (Count I), defamation and commercial disparagement (Count III), as well as promissory estoppel (Count IV). (*Id.* at 1 n.1 ("[T]his Second Amended Complaint restates verbatim Counts I, III, and IV set forth in Magic's Amended Complaint . . . . Magic, in good faith, does not believe it can further amend these counts to remedy the court-perceived deficiencies . . . .").)

On September 15, 2023, Defendant moved to dismiss the SAC pursuant to Rule 12(b)(6). (ECF No. 45.) Plaintiff opposed, and Defendant replied. (ECF Nos. 50 & 51.)

## II. **LEGAL STANDARD**

On a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), courts "accept the factual allegations in the complaint as true, draw all reasonable inferences in favor of the plaintiff, and assess whether the complaint and the exhibits attached to it 'contain enough facts to state a claim to relief that is plausible on its face.'" *Wilson v. USI Ins. Serv. LLC*, 57 F.4th 131, 140 (3d Cir. 2023) (quoting *Watters v. Bd. of Sch. Directors of City of Scranton*, 975 F.3d 406, 412 (3d Cir. 2020)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Clark v. Coupe*, 55 F.4th 167, 178 (3d Cir. 2022) (quoting *Mammana v. Fed. Bureau of Prisons*, 934 F.3d 368, 372 (3d Cir. 2019)). When assessing the factual allegations in a complaint, courts "disregard legal conclusions and recitals of the elements of a cause of action that are supported only by mere conclusory statements." *Wilson*, 57 F.4th at 140 (citing *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 903 (3d Cir. 2021)). The defendant bringing a Rule 12(b)(6) motion bears the burden of "showing that a complaint fails to state a claim." *In re Plavix Mktg.,*

*Sales Pracs. & Prod. Liab. Litig. (No. II)*, 974 F.3d 228, 231 (3d Cir. 2020) (citing *Davis v. Wells Fargo*, 824 F.3d 333, 349 (3d Cir. 2016)).

### III.   DISCUSSION

#### A.   COUNT I—BREACH OF CONTRACT

Plaintiff (as agent) asserts a breach-of-contract claim on behalf of various unidentified Landlords (as principals). (ECF No. 44 ¶ 1 ("Magic brings this action against Defendant . . . in Count I, as the authorized agent of various principals . . . .").) The unidentified Landlords supposedly entered into lease agreements with Defendant that give rise to the contract claim. (*Id.* ¶ 139 ("T-Mobile has breached the Telecomm Leases entered by those Landlords . . . .").)

The Court previously dismissed Plaintiff's contract claim for lack of standing because Plaintiff should have brought the claim in the name of the Landlords. (ECF No. 40 at 5-12.) At minimum, Plaintiff should have identified the Landlords on whose behalf the contract claim is asserted. (*Id.*) Relying on precedent from the United States Court of Appeals for the Third Circuit, this Court explained that "authorizing an agent to sue does not confer on the agent a right to sue 'in his own name' because, unlike assignments, it 'does not transfer an ownership interest in the claim' but 'simply confers on the agent the authority to act 'on behalf of the principal.'" (*Id.* at 10 (quoting *Am. Orthopedic & Sports Med. v. Indep. Blue Cross Blue Shield*, 890 F.3d 445, 455 (3d Cir. 2018))); *see also* Fed. R. Civ. P. 17(a) ("An action must be prosecuted in the name of the real party in interest."). The Court also noted that allowing Plaintiff to conceal the identity of the Landlords on whose behalf the contract claim is asserted "would be contrary to fundamental tenets of fairness that entitle T-Mobile, like any defendant, to know who is making a claim against it." (*Id.* at 9 (citing *Doe v. Megless*, 654 F.3d 404, 408 (3d Cir. 2011) ("Identifying the parties to the proceeding is an important dimension of publicness. The people have a right to know who is using their courts. And, defendants have a right to confront their accusers." (citations omitted))).)

Rather than address these defects, Plaintiff now stands on its prior allegations. (ECF No. 44 at 1 n.1.) Plaintiff has not identified a single Landlord on whose behalf the contract claim is asserted nor sought to bring the contract claim in the name of any Landlord. (*Id.* ¶¶ 135-140.) Accordingly, the dismissal of Plaintiff's contract claim for lack of standing is final for the reasons given before.[2] (*See* ECF No. 40 at 5-12.)

### B. COUNT II—TORTIOUS INTERFERENCE WITH PRESENT AND PROSPECTIVE BUSINESS RELATIONS[3]

Plaintiff's tortious interference claim alleges that but for Defendant's conduct—namely, the slow-rolling and denial of the tax reimbursement claims—Plaintiff "would have obtained hundreds of new Landlord clients . . . which would have generated millions of dollars in additional revenue." (ECF No. 44 ¶ 147.) Plaintiff also alleges that "some of the Landlords . . . terminated Magic's right to act on their behalf" when Defendant denied the reimbursement claims, and other "Landlords who were in discussions . . . to enter an Agency Authorization [with Plaintiff], refused or otherwise failed to do so." (*Id.* ¶¶ 161-162.)

The Court previously dismissed Plaintiff's tortious interference claim without prejudice for two primary reasons. (ECF No. 40 at 12-19.)

*First*, Plaintiff had not identified "a specific Landlord that actually terminated an Agency Authorization nor a specific Landlord that opted not to enter into an Agency Authorization due to T-Mobile's alleged actions, . . . and courts in this Circuit have held that claims for tortious

---

[2]   Dismissal for lack of standing is typically without prejudice. *See, e.g., Patel v. Allstate New Jersey Ins. Co.*, 648 F. App'x 258, 262-63 (3d Cir. 2016). But where, as here, a plaintiff "cannot amend or declares his intention to stand on his complaint . . . the order become[s] final and appealable." *Borelli v. City of Reading*, 532 F.2d 950, 951-52 (3d Cir. 1976).

[3]   For purposes of motion practice, "the parties agree[d] that New Jersey law applies" to Plaintiff's common law claims brought on its own behalf, and the parties do not dispute that in their most recent briefing. (ECF No. 19 at 12 n.2.)

5

interference must plead the existence and identity of at least a single, specific customer lost as a result of the alleged interference." (*Id.* at 14 (collecting cases).)

*Second*, Plaintiff had not pleaded plausible allegations that Defendant acted with malice and without legal justification in denying the tax reimbursement claims. (*Id.* at 16-19.) Ultimately, the underlying contractual relationships between the Landlords and Defendant provide a legitimate basis for Defendant's course of action, even if its interpretation of the contract was flawed, and Plaintiff did not cite case law that supports the inference that denying claims under a contract "was not in keeping with the 'rules of the game' or exceeded standard business morality." (*Id.* at 18-19 (citations omitted).)

In the SAC, Plaintiff adequately addresses the first basis for the Court's dismissal. Plaintiff now alleges that "some" of the Landlords who terminated their business relationship with Plaintiff include "Fraser's Multico Inc. and Parkash 3990 L.L.C." (ECF No. 44 ¶ 161.) This is sufficient at this early stage to plausibly establish that there were business relationships between Plaintiff and specific clients/customers that were negatively affected by Defendant's alleged conduct. *See, e.g.*, *CMC Food, Inc. v. Mitlitsky Eggs, LLC*, Civ. No. 18-8939, 2019 WL 5206104, at *9 (D.N.J. Oct. 16, 2019) ("Mitlitsky Eggs only identifies one customer—Bozzuto's—but a plaintiff need not identify multiple lost business opportunities to establish a cause of action for tortious interference." (collecting cases)).

However, as to the Court's second basis for dismissal, Plaintiff still does not plausibly allege that Defendant acted with "malice" and "without justification or excuse" in denying the tax reimbursement claims submitted under the Landlords' leases. *See Printing Mart-Morristown v. Sharp Elecs. Corp.*, 563 A.2d 31, 37 (N.J. 1989) ("[T]he complaint must allege facts claiming that the interference was done intentionally and with 'malice.' . . . [M]alice is defined to mean that the harm was inflicted intentionally and without justification or excuse." (citations omitted)); *see also*

6

*Matrix Distributors, Inc. v. Nat'l Ass'n of Boards of Pharmacy*, 34 F.4th 190, 200 (3d Cir. 2022) ("A New Jersey tortious interference claim has four elements: (1) 'a protected interest,' (2) 'malice,' (3) 'a reasonable likelihood that the interference caused the loss of the prospective gain,' and (4) 'resulting damages.' Malice means that 'harm was inflicted intentionally and without justification or excuse.'" (citations omitted)).

Plaintiff has added several paragraphs to the SAC related to Defendant's alleged "malice," including that Defendant "only retroactively denied claims and demanded repayment . . . from Landlords with agency agreements with Magic"; "[i]ntentionally delay[ed] the processing of Claims Packages" and "refus[ed] to provide . . . information concerning why the claims were being held up"; "refus[ed] to permit Magic to communicate with Lease Specialists . . . and mandat[ed] that all communications be sent to a general T-Mobile email account"; and writing allegedly "defamatory letters directly to Magic's clients." (ECF No. 44 ¶ 160 (emphases removed).)

Plaintiff argues that these paragraphs show that Defendant acted "to destroy Plaintiff's business . . . and to cover-up [Defendant's] decades long artificial inflation of its profits." (ECF No. 50 at 11.) Specifically, Plaintiff argues that its allegations demonstrate that "T-Mobile knows it was obligated to pay all of the claims which it paid and is now improperly trying to claw back," and this is not "a legitimate change in position but . . . an improper, immoral and likely illegal attempt to destroy Magic's business." (*Id.* at 12-13.)

Having carefully reviewed the SAC as well as Plaintiff's arguments, the Court once again concludes, for the reasons it gave before, that Plaintiff has not plausibly established that Defendant acted with malice. (*See* ECF No. 40 at 17-19; *see also* ECF No. 19 at 12-14.) The majority of new paragraphs in the SAC either reiterate or cross-reference allegations that were already deemed insufficient in the Amended Complaint. At root, Plaintiff accuses Defendant of exercising its contractual rights under the leases with the Landlords in a manner intended to advantage Defendant

7

and disadvantage the Landlords and Plaintiff. This does not give rise to a tortious interference claim. It is implausible to suggest that a party that decides to exercise its contractual rights in a self-interested manner—here, Defendant's decision to deny the tax reimbursement claims under the leases and to seek to recover monies alleged to have been paid in error under the leases—has engaged in tortious activity. *See Woodmont Properties, LLC v. Twp. of Westampton*, 270 A.3d 415, 421 (N.J. Super. Ct. App. Div. 2022) ("As a general matter, a party cannot be held liable for tortiously interfering with another's contractual rights when pursuing its own lawful rights. 'That which one has a right to do cannot become a tort when it is done.'" (citation omitted)); *Levin v. Kuhn Loeb & Co.*, 417 A.2d 79, 86 (N.J. Super. Ct. App. Div. 1980) ("Since defendant had that right, the exercise thereof constituted ample justification for its action and cannot result in the imposition of tort liability."); *see also Matrix Distributors, Inc.*, 34 F.4th at 200.

Critically, as the Court previously explained:

> The fact that T-Mobile may have sought to economically advantage itself by interpreting the lease agreements in a manner that allowed T-Mobile to deny the claims Magic submitted does not plausibly support the inference that T-Mobile wrongfully interfered in the relationship between the Landlords and Magic. *See Dello Russo*, 817 A.2d at 434 ("[T]he fact that a breaching party acted 'to advance [its] own interest and financial position' does not establish the necessary malice or wrongful conduct." (quoting *Sandler v. Lawn-A-Mat Chem. & Equip. Corp.*, 358 A.2d 805, 813 (N.J. Super. Ct. App. Div. 1976))).

> Indeed, even if T-Mobile's interpretation of the leases were at some point held to have been incorrect and it is determined that T-Mobile owes the Landlords for unpaid reimbursements, this would not give rise to a claim sounding in tort because T-Mobile had its own equal contractual right to interpret and perform under the leases. *See 1 Reliable Transportation, Inc. v. Trader Joe's Co., Inc.*, 2020 WL 4279789, at *5 (N.J. Super. Ct. App. Div. July 27, 2020) ("Significantly, an act that is done in the exercise of an equal or superior right cannot support a claim of tortious interference. A party's exercise of a right 'constitute[s] ample justification for its action and cannot result in the imposition of tort liability.'" (quoting *Kopp, Inc. v. United Techs., Inc.*, 539 A.2d 309, 315 (N.J.

> Super. Ct. App. Div. 1988))). As the Court previously wrote, "[t]he underlying contractual relationships between T-Mobile and the Landlords provides a legitimate basis for T-Mobile's course of action . . . , regardless of whether its interpretation of the Leases is ultimately correct." (ECF No. 19 at 14.) Further, Magic has not explained how T-Mobile's decision to audit the claims Magic submitted and then to deny the claims and/or seek to claw back monies T-Mobile claims to have paid in error was not in keeping with the "rules of the game" or exceeded standard business morality. *See, e.g., Bedwell Co. v. Camden Cnty. Improvement Auth.*, Civ. No. 14-1531, 2014 WL 3499581, at *4 (D.N.J. July 14, 2014) (dismissing tortious interference claims where "[h]ow [alleged] conduct exceed[ed] standard business morality . . . [wa]s unexplained").
>
> [(ECF No. 40 at 18-19; *see also* ECF No. 19 at 12-14.)]

Nothing that Plaintiff now alleges alters the Court's reasoning or conclusion. Plaintiff also cites no new case law in support of its position, writing that "Plaintiff fully agrees with and adopts the Court's recitation of the law as to what conduct is considered malicious in New Jersey for purposes of a claim of Tortious Interference." (ECF No. 50 at 9.) Accordingly, Plaintiff's claim for tortious interference with present and prospective business relations is dismissed with prejudice.

### C.  COUNT III—DEFAMATION AND COMMERCIAL DISPARAGEMENT

Plaintiff alleges that Defendant is liable for defamation and commercial disparagement based on two statements: *first*, when Defendant told the unidentified Landlords via letter that Plaintiff "had presented 'invoices' to T-Mobile when, in fact, Magic had submitted detailed and comprehensive Claim Packages," and *second*, when Defendant told the unidentified Landlords via letter that "'T-Mobile believe[d] the invoice was issued in error' by Magic." (ECF No. 44 ¶¶ 124-125.)

The Court previously dismissed the defamation/disparagement claim without prejudice. (ECF No. 40 at 19-22.) As to the first statement, Plaintiff had failed to allege, and the Court was

9

unable to find, "a meaningful difference between the term 'invoice' and 'Claim Package.'" (*Id.*) Plaintiff had also failed to set forth how using the term "invoice" would expose it to hatred, contempt, ridicule, or lead to a loss of good will and confidence. (*Id.* (citation omitted).) As to the second statement, Defendant's "assertion that it 'believe[d] the invoice was issued in error'" was "plainly an expression of opinion as to its liability under the Leases, as indicated by the express use of the term 'believe.'" (*Id.* at 19-20.) For both statements, the Court found nothing that suggested that they were made "maliciously" by Defendant. (*Id.* at 20.) The Court therefore concluded that the alleged statements did not suffice to maintain a defamation/disparagement claim. (*Id.* at 21-22.)

Plaintiff now stands on its prior allegations. (ECF No. 44 at 1 n.1.) Accordingly, Plaintiff's defamation and commercial disparagement claim is dismissed with prejudice for the reasons given before. (*See* ECF No. 40 at 19-22; *see also* ECF No. 19 at 14-17.)

### D. Count IV—Promissory Estoppel

Finally, Plaintiff alleges that Defendant is liable under the theory of promissory estoppel because "T-Mobile, on several occasions both orally and in writing made a clear and definitive representation to Magic that the claims it submitted on behalf of its clients . . . were complete, accurate, and would be paid." (ECF No. 44 ¶ 182.)

The Court previously dismissed the promissory estoppel claim without prejudice. (ECF No. 40 at 22-24.) The Court found that Plaintiff's allegations were "threadbare," merely recited the elements, and did not "contain specific factual matter that raise[d] a reasonable expectation that discovery w[ould] reveal evidence in support" of the claim. (*Id.* at 23 (collecting cases).) The Court explained that not only had Plaintiff failed to plead facts supporting a clear and definite promise by Defendant but any reliance on such a promise by Plaintiff would have been unreasonable when Plaintiff simultaneously pleaded that "T-Mobile repeatedly stated that it was

reviewing the claims for accuracy and validity," undermining the notion that Defendant made "a clear and definite" promise to pay the claims. (*Id.* at 23-24.)

Plaintiff now stands on its prior allegations. (ECF No. 44 at 1 n.1.) Accordingly, Plaintiff's promissory estoppel claim is dismissed with prejudice for the reasons given before. (*See* ECF No. 40 at 22-24; *see also* ECF No. 19 at 17-19.)

IV. **CONCLUSION**

For the reasons set forth above, and other good cause shown, Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint is **GRANTED**. An appropriate Order follows.

Dated: April 30, 2024

_____
**GEORGETTE CASTNER**
**UNITED STATES DISTRICT JUDGE**